IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00636-PAB

DOUGLAS C. LARUE,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

**ORDER**

This matter is before the Court on plaintiff Douglas C. LaRue's complaint [Docket No. 1], filed on March 13, 2012. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On May 8, 2008, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 15. Plaintiff alleged that he had been disabled since April 30, 2008. *Id*. After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on May 13, 2010. *Id*. On July 23, 2010, the ALJ

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

issued a decision denying plaintiff's claim. *Id*. at 24.

The ALJ found that plaintiff had the following severe impairments: "multiple sclerosis and depression." R. at 17. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*., and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform a range of sedentary to light work as defined in 20 C.F.R. § 404.1567(a) and (b), while lifting and carrying up to ten pounds frequently, and up to twenty pounds occasionally; standing and walking for up to three hours in a regular eight hour work day, and sitting for up to six hours; only occasionally balancing, stooping, crouching, kneeling, crawling, or climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; avoiding temperature extremes; and while performing simple, unskilled work, involving one, two, or three step instructions.

R. at 18. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 24.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred in arriving at her RFC determination because she did not properly consider certain medical opinions and because her RFC determination did not reflect her findings regarding plaintiff's mental impairments. Docket No. 15 at 18-19.

#### *1.  Opinion of Plaintiff's Treating Physician*

Plaintiff objects to the ALJ's RFC determination on the grounds that the ALJ improperly discounted the opinion of plaintiff's treating physician, Dr. Randall Bjork, and relied instead on the opinion of a nonexamining state agency physician, Dr. Ian Happer. Docket No. 15 at 23-38.

A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator."  SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).  The level of deference accorded a non-controlling opinion of a treating physician depends on a number of factors, including the length of the treating relationship, the nature and extent of the relationship, the supportability of the opinion and its consistency with the record as a whole, and the physician's medical specialization.  20 C.F.R. § 404.1527(c)(2)-(6).  An ALJ need not expressly discuss the application of each factor to each medical opinion, so long as the ALJ's opinion is

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citations omitted). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citations omitted).

"Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight give to the opinions of a State agency medical . . . consultant." 20 C.F.R. § 416.927(e)(2)(ii). Given the weaker ties between claimants and non-treating physicians, the opinions of such physicians "are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). "[B]ecause nonexamining sources have no examining or treating relationship with [claimants], the weight [an ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions" and "the degree to which these opinions consider all of the pertinent evidence in [a] claim, including opinions of treating and other examining sources." 20 C.F.R. § 404.1527(c)(3).

Omitting a sufficiently thorough explanation for the weight given to the opinion of a treating physician (if given less than controlling weight) or for the weight given the opinion of a nonexamining physician is grounds for remand. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (remanding denial of benefits because ALJ improperly

rejected the treating physician's opinion and relied instead on the findings of a non-treating physician, which the court found to be "of suspect reliability"); *Andersen v. Astrue*, 319 F. App'x 712, 728 (10th Cir. 2009) (remanding denial of benefits where ALJ failed to indicate weight accorded to treating physicians' opinion and failed to supply "good reasons" for according them that weight).

Plaintiff was initially diagnosed with multiple sclerosis in 1991.  R. at 237.  Dr. Bjork confirmed the diagnosis in 2007.  R. at 228.  At the time of his first visit to Dr. Bjork, plaintiff complained of numbness and tingling in his lower extremities and severe fatigue.  R. at 226.  Plaintiff saw Dr. Bjork for follow-up appointments every one to three months from April 2007 through March 2010.  R. at 214-31, 307-20.

On August 13, 2008, Dr. Happer completed a physical RFC assessment for plaintiff based on his review of plaintiff's medical file.  R. at 235-42.  Dr. Happer found that plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push or pull without limitation.  R. at 236.  He further opined that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, has no manipulative, visual, or communicative limitations, and should avoid exposure to extreme cold or heat.  R. at 237-39.  Dr. Happer stated that plaintiff was "independent in self-care with occasional assist from spouse.  He prepares light meals, does light house and yard chores, shops with spouse and drives.  His allegation of impairment is partially credible."  R. at 240.  He checked the box indicating there were no statements from a treating source in plaintiff's file.  R. at 241.

On August 25, 2008, Dr. Bjork completed a multiple sclerosis RFC questionnaire

for plaintiff, in which he opined that plaintiff's pain and fatigue were sufficient to interfere with his concentration on a constant basis; that plaintiff is severely limited in his ability to cope with work stress; that plaintiff can walk three blocks, sit for nearly two hours, and stand for fifteen minutes in an eight-hour day; that plaintiff would need to shift position constantly, take several unscheduled breaks per day of between 30 and 120 minutes each, and miss work more than three times per month; that plaintiff can occasionally lift twenty pounds and frequently lift less than ten; and that plaintiff's limitations were of at least twelve months' duration. R. at 247-252.

The ALJ noted that the record reflected a number of inconsistencies between plaintiff's testimony and other substantial evidence, as well as between Dr. Bjork's opinion of plaintiff's RFC and the clinical findings of Dr. Bjork's own examinations. R. at 20-23. For example, the ALJ commented on the lack of evidence supporting plaintiff's testimony that he experiences problems with his left hand, that he blacked out sometime in the nine months prior to the administrative hearing, and that he was required to use a cane. R. at 20. The ALJ noted that plaintiff's MRIs showed no significant deterioration from 2007 to 2008; that in May and August 2008 plaintiff was found to have normal neurologic exam results, normal motor function, normal reflexes, intact coordination, and a normal gait; and that in April 2009 plaintiff was found to have intact memory, appropriate behavior and speech, and proper orientation. R. at 21.

The ALJ specifically noted the following comment from Dr. Bjork's March 23, 2010 examination of plaintiff: "[h]e says he can't work, but his hands are calloused and soiled. He wouldn't share with me how 'that' continues to be the case. His 'MS exam' remains quite satisfactory." R. at 307. During the same examination, Dr. Bjork

8

described plaintiff's gait as: "affected, peusdoslow, covering 25 feet in 10 seconds due to the pace he chose as he was observed–he walked faster as he was observed leaving the clinic area." *Id.* The ALJ found that Dr. Bjork's opinion of plaintiff's RFC contradicted Dr. Bjork's own examination notes, which consistently describe plaintiff as alert and oriented with normal gait, normal motor function, no ataxia[2] in coordination, intact rapid alternating movements, and no memory deficits. R. at 22. The ALJ further noted that Dr. Bjork made certain statements after submitting the RFC questionnaire to the effect that, although plaintiff could no longer work as a manual laborer, he might be able to engage in other occupations. *Id.* In December 2008, Dr. Bjork stated that plaintiff "should not be working around the tools of manual labor" and "should not be in the manual work force" and, in May 2009, he stated that plaintiff "says that he would 'love to work', [but] his days as a laborer are over." *Id.*; R. at 282, 318.

The ALJ also took into account plaintiff's reported daily activities, which include gardening, using the computer, visiting with his son and with friends, reading, watching television, driving, household chores, limited shopping trips, and smoking cigarettes. R. at 21. The ALJ concluded:

> Considering these internal inconsistencies, along with the repeated imaging studies indicating stability in the claimant's multiple sclerosis, and Dr. Bjork's later statement that the claimant's multiple sclerosis exam remained satisfactory, the undersigned cannot give Dr. Bjorks' [sic] May 2008 assessment controlling weight, and in fact gives it little weight, especially concerning the claimant's inability to sit for even two hours in a day, or to stand and walk for more than fifteen minutes in a day.

---

[2] "Ataxia is 'failure of muscular coordination; [or] irregularity of muscular action.'" *Barker v. Astrue*, 459 F. App'x 732, 734 n.4 (10th Cir. 2012) (citing Dorland's Illustrated Medical Dictionary 153 (32d ed. 2012)).

R. at 22. She further stated that, while she agreed that plaintiff was precluded from performing manual labor, "the evidence as a whole simply does not support [Dr. Bjork's] earlier assessment that the claimant can sustain no level of work." R. at 22-23. With respect to Dr. Happer's opinion, the ALJ stated that it was

> given great weight, as it is consistent with and well supported by the evidence as a whole, which indicates that the claimant's condition has not progressed to the extent that it prevents him from all ambulation or exertional activity, and that he has been routinely noted to exhibit normal gait, coordination, and motor function.

R. at 23. Accordingly, the ALJ made an RFC determination that was consistent with the limitations noted by Dr. Happer and excluded the limitations on sitting, standing, and walking recommended by Dr. Bjork, as well as any mention of the fatigue or need for periodic breaks from work described by Dr. Bjork. R. at 18.

Plaintiff argues that the ALJ erred in dismissing Dr. Bjork's opinion and relying instead on Dr. Happer's opinion. Docket No. 23 at 23-38. The Commissioner counters that the ALJ permissibly accorded less weight to Dr. Bjork's opinion because of the noted inconsistencies between that opinion and the record evidence. Docket No. 16 at 9.

The ALJ discussed in detail the inconsistencies–both between Dr. Bjork's opinion and the objective medical evidence offered in support of it and between Dr. Bjork's opinion and other record evidence of plaintiff's limitations–on which she based her decision to deny controlling weight to Dr. Bjork's opinion. R. at 22-23. The ALJ then explained that she would accord little weight to Dr. Bjork's opinion because it lacked

10

supportability and consistency.³  R. at 22.  The ALJ's analysis up to this point complied with applicable legal standards.

However, the ALJ's analysis of Dr. Happer's opinion was not sufficient.  The ALJ explicitly addressed only one of the relevant factors under 20 C.F.R. § 404.1527(c), namely, consistency with other substantial evidence in the record.  R at 23.  Although the ALJ was not required to discuss each factor, she was required to consider them. *See* 20 C.F.R. § 404.1527(c).  Of greatest relevance in this instance is the supportability of Dr. Happer's opinion, which is based in part on the degree to which he considered all of the relevant evidence and provided explanations for his opinion.  *See* 20 C.F.R. § 404.1527(c)(3).  Given that Dr. Happer did not have a treating relationship with plaintiff and did not consider the records of plaintiff's treating physician in arriving at his opinion, the brevity of the ALJ's discussion of Dr. Happer's opinion is insufficient to permit the Court to conclude that she considered all relevant factors in deciding to accord his opinion great weight.  *See* 1996 WL 374180, at *2.

Moreover, faced with inconsistencies between Dr. Bjork's opinion and Dr. Happer's opinion, the ALJ was required to determine whether Dr. Happer's opinion outweighed Dr. Bjork's opinion in light of the relevant factors.  *See Hamlin*, 365 F.3d at 1215.  The ALJ's opinion does not contain an explanation, or reflect her consideration

---

³ Plaintiff argues that the ALJ's decision reflects a misunderstanding of the medical evidence because plaintiff was diagnosed with relapsing-remitting multiple sclerosis, which may manifest in an alternation between periods of higher and lower functioning.  Docket No. 15 at 31-33.  However, even excluding the ALJ's references to inconsistencies based on improvements in plaintiff's condition, the Court finds that the evidence of record inconsistencies constitutes substantial evidence based upon which the ALJ could give Dr. Bjork's opinion less than controlling weight.  *See* R. at 21-23.

of, whether and why Dr. Happer's opinion was entitled to greater weight than Dr. Bjork's opinion.

As the ALJ did not apply the correct legal standards in assessing Dr. Happer's opinion and weighing it against that of Dr. Bjork, this case is subject to remand. *See Frey*, 816 F.2d at 515.

### *2. Mental Residual Functional Capacity Finding*

Plaintiff argues that the ALJ erred in failing to include a more specific mental restriction in her RFC determination. Docket No. 15 at 38-42.

An impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Tenth Circuit has held that "intact mental aptitudes are not skills, but, rather, general prerequisites for most work at any skill level" and thus that a cognitive or emotional impairment cannot be functionally equated with a lack of skill. *Wayland v. Chater*, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996). In arriving at this holding, the court explained that "deficiencies in concentration . . . may well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work." *Id.*; *see also Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (limiting claimant to "simple, unskilled job tasks" was too broad to account for ALJ's more specific findings that claimant had mild restrictions in daily activities, mild difficulties with social function, and moderate difficulties in maintaining concentration, persistence, or pace). "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether

jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996). Absent a proper hypothetical, a VE's testimony does not constitute substantial evidence. *Id*.

Here, the ALJ found that plaintiff's depression constitutes a "severe impairment" within the meaning of 20 C.F.R. § 1520(c) because, even though plaintiff did not seek out treatment specifically for his depression, he has been prescribed medication for symptoms of depression. R. at 17. The ALJ found that plaintiff's depression does not meet one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 because plaintiff has "no more than moderate limitations in any area of mental functioning," as he has had no episodes of decompensation, has managed his depression with medication, and has not been advised to seek out counseling or other treatment for his depression. R. at 18. At his administrative hearing, plaintiff testified that he has problems with short-term memory and concentration, R. at 40-41, and, with respect to his depression, that he is "not in a good mood" and "melancholy sometimes." R. at 42. Plaintiff also testified that he has to lie down several times each day for one or two hours at a time to cope with his physical pain and fatigue. R. at 42-43. The ALJ concluded that, "giving the claimant the benefit of the doubt regarding his pain, fatigue, and depression, it is reasonable to conclude that the claimant would be best suited to the performance of no more than simple, unskilled work activities." R. at 23. The hypothetical question that the ALJ posed to the VE instructed the VE to assume that plaintiff was limited to "work which is simple and unskilled with one, two, or three step instructions." R. at 46.

Plaintiff argues that the ALJ's RFC determination is improper because it sets

forth a conclusion as to the impact of plaintiff's mental limitations on his ability to work instead of stating the specific functional limitations imposed by his mental condition. Docket No. 15 at 38-42. He further argues that the ALJ's hypothetical question to the VE, which was based on the RFC determination, was flawed for the same reason. *Id*. The Commissioner counters that limiting a claimant to simple, unskilled work is sufficiently specific to constitute a functional limitation appropriate to an RFC determination. Docket No. 16 at 11-14.

The Court finds the reasoning of *Wayland* persuasive and applicable to the instant matter. It is unclear how the ALJ's findings that plaintiff's depression significantly interferes with his ability to work and that plaintiff is subject to fatigue and chronic pain correspond to a limitation regarding skill level. An inability to concentrate, remain awake, or overcome symptoms of depression could "be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or [his] coworkers, in the kinds of repetitive tasks typically involved in unskilled work." *See* 1996 WL 50459, at *2.

The Commissioner relies on a series of cases citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001), for the proposition that an ALJ's hypothetical question describing a claimant able to perform "simple, repetitive, routine tasks adequately captures [plaintiff's] deficiencies in concentration, persistence or pace." *Howard* is distinguishable, however, because in that case the state agency physician specifically stated that plaintiff was "able to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of

function." *Id*.; *see also Chambers v. Barnhart*, 2003 WL 22512073, at *3 n.2 (10th Cir. Nov. 6, 2003) (recognizing that "restricting a claimant to simple tasks can address a deficiency in concentration, persistence and pace *if* that deficiency *was found to apply only to complex tasks*" but remanding because "it would be pure speculation to hold that the ALJ's failure to make the explicit functional assessment required by the regulation is obviated by a task-dependent qualification that he never made") (emphasis in original). The ALJ in this case did not rely on any medical evidence indicating that plaintiff has a sufficient attention span, despite complaints of constant fatigue and depression, to perform simple, unskilled tasks.  Absent such evidence, it was impermissible to translate plaintiff's emotional and cognitive impairments into a functional limitation based on skill.  *See Wayland*, 1996 WL 50459, at *2.

## III.  CONCLUSION

On remand, the ALJ should (1) consider all relevant factors in assessing how much weight to accord Dr. Happer's opinion; (2) weigh Dr. Bjork's opinion against Dr. Happer's opinion to determine whether the latter outweighs the former; and (3) account more accurately for plaintiff's cognitive and emotional impairments in framing a hypothetical question to the VE.  Wherefore, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED October 15, 2013.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge